The next case for today is 2023-40098 United States of America v. Eldon Don Brannan Let's give them a couple seconds to come in so that it doesn't disrupt the argument. Mr. House, you may proceed now. Thank you, Judge Elrod, and may it please the Court. I'm here today to talk about Eldon Brannan's conviction under the National Firearms Act for the alleged unlawful possession of one of the military-style weapons that Act classifies as a registrable destructive device, in this case a purported explosive bomb in the form of an unsealed metal tube that Mr. Brannan filled with powder from the commercial fireworks collection he stored in the same unlocked bedroom closet. He says it was a Roman candle, right? He doesn't say anything. Mr. Brannan didn't testify at this trial, Judge Duncan, but we did have an expert testify that there was some ambiguous, benign entertainment value purpose that could have been achieved based on the design of this device, and that's why it didn't automatically qualify as an explosive. It had to be shown, the government had to show that Mr. Brannan designed it for the purpose of weaponizing it. Remind me, what did the experts say about the dimes that were in it? So the experts said, they actually both agreed on this, that the dimes were supposed to act as a sealant at the bottom, what everybody was calling the bottom, and that's actually consistent with what the agent testified in United States v. Harberger, which we're going to be talking about a lot today, I'm sure you anticipated. And so in that case it was pennies, but the point was that the agents testified that they're using this to kind of reinforce the sealant at the bottom, because that's important. Obviously the number one rule of bomb making is that you have to create confinement so that way the gas expands and it explodes. If the gas has a way to escape, if there's just containment, then it's not likely to explode. There's a possibility that it wasn't designed to cause the type of explosion that's going to harm or kill people, and that was important in this case because the government in its brief talked about the dimes, and it's true that the government's expert, Agent McCullough, said that the dimes could act as a way, as something that would increase the harm that would result if this device was to explode. Because they would fragment, right? The dimes wouldn't themselves fragment, they would become fragmentation. They would shoot, right? But the point is that that wasn't evidence that was indicative of an intent to weaponize this device because it was simply used to seal the bottom. And that's exactly the same thing that the agents testified in Harberger. The pennies served the same purpose, and of course in Harberger this court found the evidence insufficient. And so that, you know, as the court knows, we're asking this court to set aside Mr. Brannon's conviction for either of two reasons. First, for essentially the same reasons identified in Harberger, the government failed to carry its burden to prove beyond a reasonable doubt that this self-made metal item was purposefully designed as an explosive weapon. And then second, at the very least, it was reversible error to keep the jury in the dark as to that burden, especially in a case like this one where even the district court recognized in thinking that the burden was actually lower than we contend it was, that this was a close case and that the jury could have gone either way. So at the very least, this is not a harmless instructional error, if you agree with me as to the interpretation. No, I appreciate that. I just wanted the facts to come out a little bit before we started talking about law stuff. I thought your principal argument was that the jury needed to be instructed, or this, well, the intent to design as a weapon is an element of the offense and not an affirmative action, affirmative defense. Is that right? Are you arguing that? Yes, that is what we argued. Okay, just tell me what I do with Beeson, since I got to, we got to follow the, you know, for better or worse, we got to follow our cases. Absolutely. What do I do with that? What you do with it is that there are several things you could do with it, and you anticipated the first thing I wanted to say is I think that the most help I can be is to kind of clarify our position as to the governing legal rule, because in my brief, I did endeavor at some length, one could say I droned upon about the reasons why we think Harberger's interpretation is consistent with the tech structure and purpose of the National Firearms Act from a first principles perspective. But I want to be clear that the panel can rule for Mr. Brannon on both issues without doing anything more or saying anything more than it said in Harberger. We're not asking you to add an element or to recognize a new element. All we're asking you to do is apply Harberger. We want a narrow ruling, if it's to be in our favor, of course, that suggests that the same reasons that it was insufficient in Harberger, and you don't have to go and do anything further. Now, you rightly recognize Beeson. And so what I want to do is point out two aspects of Harberger that I think that we think are very important to this case and then explain why Beeson doesn't actually impact or there's a way for this court to rule where it doesn't have to say Beeson was right or wrong. Oh, it can. Right. You certainly can. And I stand by my arguments that Beeson has not stood the test of time. But what I mean is that we have to follow it. Certainly. Has it been overruled? Certainly. But what I'm saying is the relief we're asking for here is not inconsistent with Beeson in a way that it would preclude that relief. And I'll try to explain why. First, the two things about Harberger that are important are that it made clear and, in fact, reaffirmed what this court's recognized and many other courts have recognized for a long time is that an item's purposeful design for use as one of those enumerated weapons in Section 5845F is an essential feature or characteristic that the government has to prove in order to establish that the item was, in fact, a destructive device. That's the actual element that's really at stake here. And then the second thing is that Harberger told us how the government can prove that. There's two ways. It could show that the type of device that we have is made of components that no one would ever use except if they were really trying to blow something up in terms of trying to injure a person or destroy another person's property. But in a case like that one and like this one where there is a possibility of a benign or entertainment value or sporting use, you know, people go out into their woods and blow up timber. Mr. Harberger was keen on blowing up beaver dams with that little bamboo device. In cases like that, the government has to do more. It's not enough to just show that the item could explode and that if it did, it would do harm because that's, of course, true of any commercial stick of dynamite. It's true of any hobbyist firework. It's true of any commercial firework. If you put a big enough firework under a car, it can cause an explosion, right? And so, but that does not make it a registrable firearm under the National Firearms Act. And so now, Judge Elow? It just seems that this is slightly different than Harberger because of the jury's role. What was argued was this is not designed to explode. And the jury had the evidence and determined that they believe the government's experts, basically. And so why doesn't that, it could have gone either way. They could have said, well, it's a Roman candle. But they didn't. That's true. They didn't, Judge Elrod. Why is that? Why don't we just respect that? The reason... Which seems different where they had all the experts, both of them. Nobody, we're not arguing here that the expert was thwarted from testifying or something with this theory. Why isn't it, why is the matter not resolved when it could have been either? Accepting that it could be either. The reason that it's not resolved, accepting that it could be either, Judge Elrod, is that in terms of sufficiency. Of course, we still have the instructional argument that we could win on even if you're saying the jury could go either way. But it's also true of Harberger that the jury, that was a jury trial. And that experts in that case testified. In fact, the expert who authored the report that determined this bomb, or this item to be a bomb, is the same expert that testified in Harberger. And the same chemist, in our case, testified in Harberger. And those agents said exactly the same things to Harberger's jury. They said, this bamboo thing has low explosive powder in it. This bamboo thing has, in fact, in that case it had metal caps on the end. Ours didn't. Ours was unsealed. And this thing, if it could blow up, in fact, it was assumed that it was, excuse me, the And if it did, it could harm people. And still, this court found the evidence insufficient in that case because the thing that it told the jury was simply, this is a thing that could explode and it could do harm. But that's not enough to show that it was designed to hurt people or blow up their property. And that's not enough to meet the government's burden to prove that essential characteristic. It's essentially like the government failing to prove that an AR-15 has been modified so that it can fire automatically with one pull of the trigger. And I obviously don't want to get into whether bump stocks qualify or don't as something that does that. You know, I think the Supreme Court has got that well in hand. And this court has had quite enough briefing on that, of course. But regardless, whatever it is that modifies a device or alters it to where it could or could not be a registrable firearm, the government has to prove that essential characteristic. And the thing about a destructive device is that it could include a bunch of things that would be innocent or benign because of the fact that it talks about explosives. If it doesn't have this design component or design characteristic, this is basically a quality that puts a citizen on constructive notice that it's the type of thing they have to go and register with the federal government before they're allowed to possess it. Because remember, we're talking about a registration scheme here. What do we do with the argument that it was an affirmative defense? Thank you, Judge Elrod. So that's the Beeson situation. And so that we don't do straight up sufficiency on that? Well, first of all, I want to make clear, Beeson has no impact on our sufficiency argument. The reason is, is that whatever Beeson meant by affirmative defense, it did not hold, contrary to what the government believed and the district court assumed below, that the burden, it's the type of defense that shifts the burden to the defense, right? At most, what it held, and in fact, in that case, it reviewed sufficiency of the evidence, that if that issue is put in front of the jury, that if it's raised, and as Judge Elrod, you recognize that this was certainly raised in this case, we made it an issue, just like it was made issue in Harberger, then we review the government's evidence, whether it was  And so at the very least, we put that in evidence. And that's why it's relevant that I pointed to all those cases after Beeson, where this court recognized that a defendant had said, I designed this to go underwater and stun fish. And that was the Charles case. And this court was like, yeah, but the thing blew up and it exploded for 200 yards. Go home, you know? And so that's the type of thing that matters. And so that's why you can accept that it's an affirmative defense in the sense that it has to be raised. But all we're asking you to do is review for sufficiency, just like Harberger did. And everybody agrees that Harberger at least determines the degree of proof necessary to meet that design for use as an explosive weapon characteristic, right? It's those two things we talked about earlier. If it's an unambiguous, either it can prove the design could only be used to hurt people, or if it's ambiguous, there's some degree of evidence showing that this person either intended to make it, if he's the maker, or intended to use it if he's just a simple possessor. Just to be clear, your view is that there is insufficient evidence of that last thing that you said here? Yes. Just as there was in Harberger? Right. And the reason is because, and the time is short and we can obviously get to some of these things on rebuttal, but Harberger did not make the absence of a metal exterior the difference between the bamboo device and other devices. What Harberger and what the 11th Circuit's decision in Hammond recognizes is that the characteristics, the circumstances matter, right? So just a bamboo stick could absolutely be a pipe bomb. What was missing in Harberger was evidence of design characteristics or a test that demonstrated that these components as designed would act or were intended to act in a way that produces an explosion of the type of force and area of effect that you would expect for something that's designed to hurt people as opposed to scare beavers and get them off. And you're saying similarly here, there is insufficient evidence along those lines? Yes. I just want to make sure I understand that so I can hear what the government says. I am. And but at bottom, we're saying that it was error to not instruct the jury that they had to find that. I mean, and Judge Elrod, if you'll allow me, I'd like to just say. I was going to ask you a question about the charge. Is that, do you want to talk about the charge? That's exactly what I was going to say. We'll give each side two extra minutes so that he can talk about the charge. And you can talk about it too. I appreciate the generosity. And the point about the charge, and I think that's relevant for Beeson is, again, the primary point here is that, again, whether Beeson was right or wrong about saying that language was an affirmative, creates an affirmative defense, it didn't say it's a burden shifting one. So there was nothing about it. You're saying that there's, I thought just off the top of my head that if it's an affirmative defense, the defense bears the burden. Is that not right? That's only right as to common law defenses or ones where Congress in the statute says the defendant bears the burden, right? So self-defense is one that the defendant has to raise and has the burdens of both production and persuasion. Where it's just the type of defense like good faith or something like that. What we say is the defendant has to put it in issue. And as long as the defendant puts up enough evidence to where a jury could find that, then the government still has the burden to overcome that component or that element beyond a reasonable doubt. And so that's what is important about that. And that's why it was wrong to think that the jury couldn't be told about this language. This is an extraordinary case in the sense that the statute defining what the term destructive device means says it shall not include any device neither designed nor redesigned for use as a weapon. And the jury didn't know that. They weren't told it. And that was at the bottom we were asking the jury to be told that that's an essential component. Because that gives us the opportunity to argue that, because this is what's significant about the charge, Judge Elrod, is as a jury was instructed here, they could have decided that, well, because this thing could explode, that makes it an explosive bomb. That makes it a destructive device. And most... But it's per se that. Right. But... Instead... But the law, isn't there a case that says it's per se that? No, there's no case that says that a... I thought we've used that language before. I think what you're referring to is the footnote in Harberger where Judge Jones was explaining what the Seventh Circuit said in United States v. Johnson about our case in United States v. Charles. That, of course, was what the Seventh Circuit was saying. Instead of what Harberger says itself. Right. And if you look at your own cases, they do not ever say that metal is per se an explosive device, whereas plastic or something else... Like that, that it automatically is a pipe bomb. Right. Okay. Can you... Is it your position that the jury charge issue was properly preserved such that the government bears the burden that it was harmless error in failing to charge the jury with that information? Oh, absolutely. We went on for pages of transcripts. Yes, that's what I... So, would that shift the burden to the government to say it was harmless error if it was error? To not give it. Yes, and they have to establish that under the Nieder standard for constitutional instructional error. Okay. Thank you. Thank you, Judge O'Rourke. Richard Amundson for the United States, and may it please the Court. I'll begin briefly just discussing the charge. To be clear, the Court asked defendant if he wanted the jury to be charged under the affirmative defense, and defense specifically said no. So, that was why the language was excised from the charge related to the design or redesign for purpose of a weapon. So, was in the format that the... I thought the defense presented the charge. They didn't present the language they wanted, and it was refused? They were asked... Can you go through that with us, please? Sure. They were asked if they wanted language related to whether or not it was designed or intended to be designed as a weapon, and the Court said it would present it as an affirmative defense, and defense counsel indicated that the language... Did not want the language in if it was an affirmative defense, that their position was that harbinger requires it elementally to be proven that it was designed as a weapon. But they were saying it should be done just straight up, that they must prove that it must be designed as a weapon. But they asked for the language to be removed once the Court made clear that it believed under Beeson it was bound to present that to the jury as an affirmative defense. No, but did they ask for the language itself that just said straight up, and that was refused? I believe it was initially... The Court initially offered it to the defendant. So, they never asked for it to be given straight up? I don't know off the top of my head. I would have to check the record. Well, it seems like the choice was... There were multiple... It seems like the choices here are, was it asked to be placed in as an affirmative defense? That's choice number one. Choice number two is, was it asked to be simply listed as an element of the offense? So, their perspective was that it should be listed as an element of the offense, and the Court determined that under Beeson it was required to be presented as an affirmative defense. At that point, defense stated that it was not raising an affirmative defense, and the language was then removed. Okay. About the charge, did it follow the Pattern Jury Instruction? It followed the Pattern Jury Instruction. They removed certain language that they believed would be extraneous, but it charged that defendant needed to knowingly possess a destructive device. It defined a destructive device as an explosive bomb. It stated that defendant needed to know the characteristics of the device, and that the device was operable, and that it was unregistered. And that all went in conjunction with the Pattern Jury Instruction. Does the government have a position on whether the Pattern Jury Charge should be updated in light of Harbinger? Should it have been updated? Should it be future updated? Either one, you can pick your... No, because Harbinger is a sufficiency case. It's not a case related to the elements of the offenses. Harbinger stands for the proposition that if the device is ambiguous as to what its nature is, there's additional evidence that the government needs to put on to establish that it's a destructive device. In particular... Well, that they intended to produce a disruptive... They're intending to make a bomb and not a Roman candle. That is part of the burden of proof, isn't it? The government's burden of proof is to establish that it is an explosive bomb under the statute. That it's a bomb and not a Roman candle. Correct, correct. That's the government's burden of proof. So shouldn't that be included in what the jury is charged on? Well, the jury was charged that it was unambiguously... The government's position was that it was unambiguously an explosive bomb, which then would mean it was a destructive device. But how can it be unambiguously an explosive bomb when we have these dueling experts? Saying whether it is or it's a Roman candle. So defense experts testify that it was abnormal that the device was made out of metal, that it was not familiar with any fireworks that had been made out of metal. The government's expert testified directly as to why it should not be considered a Roman candle. Specifically, it lacked the necessary feature of a Roman candle, an expelling charge in the device, which would cause things to shoot up out of it. On redirect, after his initial testimony, the government's destructive expert explained that the way the bomb was constructed, the powder would burn from the top to the bottom, building pressure in the bottom of the device. And just to briefly explain the nature of the device, the device is a metal pipe. It's sealed on the bottom by wax, dimes, a soda cap, and it's completely taped. This is evident from government's Exhibit 7, which shows the bottom of the device. It then contains powder. And then above the powder, there's a clay plug, a cardboard plug. And the top is not actually completely open. It's partially sealed with tape. And the government's expert testified that the tape could serve reinforcement. And this is government Exhibit 6, which is on page 927 of the record. When it looks at the top, you can see that it's not completely open. And the government's, the ATF agent who took the device apart had to use a ceramic blade to remove the tape in order to then take out the cardboard and the clay plug, exposing the explosive materials. And even in the photograph of the bottom of the device, he testified that that was the device before it was emptied. So he was able to turn the device completely upside down. And the contents didn't spill out. So from that, the device expert testified that the device had sufficient containment that if it was lit, the powder would burn rapidly. And we know it would burn rapidly from the expert chemist who testified that the materials burn rapidly. Would cause then pressure to build, heat to build, smoke to build, which would then push up against the structure, causing the structure, in his expert opinion, to fragment. And that is... Can I ask you this, counsel? Let's assume, you say in your view there's no ambiguity here and the evidence is there was evidently in Harbarger. Let's assume there was, and so we're in Harbarger land. Does that mean we must reverse for insufficiency of evidence in this case? No, because Harbarger provided certain types of evidence that the government could present to clear up whatever the ambiguity is in the device. They could detonate the device. They could build replicas, which was not done here. But they also could have expert testimony describing similar bamboo devices. In Harbarger, the experts did not testify that they were familiar with devices made from these specific materials. Here, the experts testified that they were familiar with the materials because the materials were commonly used to build pipe bombs. And from that experience, they were able to extrapolate what they expected to happen should the device be lit. So in opposed to Harbarger, where the testimony was conclusory because the experts lacked experience with the type of device, here the experts did have experience with the type of device and were able to therefore clear up any ambiguity. And they also were able to address why it wasn't a firework, namely that it was not... It was lacking certain components, namely the fact that it didn't have an expellent charge. It had nothing to shoot anything up in the air. And then the defense's own testimony that... Defense experts' testimony that it was very abnormal to have a device built with metal to have dimes in it, that this was not consistent with a firework. And he even testified he's not familiar with any Roman candles that would be in this nature. So from that, there was still sufficient evidence for the jury to rationally conclude that this was an explosive bomb and therefore a destructive device. I mean, here, it seems to me one of the issues the experts are talking about is, is this thing a firework or is it a bomb? That's just as a factual matter and from a sort of a design intent. Whereas in Harbarger, correct me if I'm wrong, the issue was not, is it a firework or not? Everyone knew that it was supposed to explode, right? It was supposed to take out beaver dams. And so the issue was, you know, is there some sort of countervailing intent here to show that, no, in fact, this was meant for another purpose? I don't believe so. The device sort of speaks for itself. I would note that this court has never found that a metal pipe filled with explosive materials would not qualify as an explosive bomb under the statute. In Harbarger, the issue was that the device... First of all, the government's testimony, as I noted, was not based on their experience with bamboo devices. That was a distinguishing factor. This court noted that the device in Harbarger was flimsy, as opposed to this, which is a metal pipe, sealed, covered with tape. And the government's own expert testified in Harbarger that it was unlikely to cause a big explosion if it were ignited. Here we have a metal pipe fragmenting and shooting crack. The bamboo pipe was supposed to explode, right? It was, but the government's expert stated that the explosive potential of the bamboo stick was small. Because of the materials, I see. It was small. Can you clarify, is the test whether it qualifies as an explosive bomb, or it could qualify as an explosive bomb, or is the test whether there is evidence that he intended, evidence beyond a reasonable doubt, that he intended to use it as an explosive bomb? Which is, what is it that the government must prove? So the statute criminalizes possession of the device, not the intended use of the device. Or the intended to create. Or the intention to create. It only penalizes individuals for possessing devices that are destructive devices. And Appellant notes in footnote four of his brief that the vast majority of courts, if the device is unambiguously an explosive bomb, that the intent of the person who possesses it is not really relevant. If I could just understand your answer to Judge Elrod. Is, in your view, is it the government's burden to prove that this was designed for use as a weapon? Not when proceeding under subsection one of the destructive device definition. In fact, this court has noted, for instance, has noted in Ross that the enumerated devices in subsection one have no legitimate social purpose. It noted in Johnson, excuse me, it noted in Jennings that they cannot conceive of any nonviolent purpose of a pipe bomb. So the government's position is that if the government establishes that it is unambiguously an explosive bomb based on the characteristics that it would both explode and send metal fragments out, that that is sufficient to prove that defendant possessed a destructive device. So I understand. So under Beeson, though, the defendant could prove that it was not designed for use as a weapon. Is that right? Yes. So once the government's established that it does fit into one of the enumerated, enumerated devices in subsection one, defendant could still come forward and say as an affirmative defense, I intended it to use it in some specific way that was not as a weapon, but that's for defendant to come forward. Well, I'm glad you brought up Ross because I'm concerned that if you have to view the design language as an affirmative defense that that in the abstract has a problem with Ross, but also I'm concerned with the Ross's value if we interpret this in favor of the government. Because we said in Ross that 5845 isn't constitutionally vague because the design language imposes a crucial limitation. And the crucial limitation that I think you referred to is that there's no social value. But in this record, isn't there testimony that there is social value for this thing to be used as a firework for entertainment and enjoyment? So the government's expert testified that in his opinion,  to the device as constructed because it was designed to explode and send metal fragmentation around. Right, but that's not the question. The question isn't, is there evidence that there's no social value? Is there some evidence in this record that there is social value? I don't believe so because of how the device was constructed and defendant's expert's testimony related to the fact that a firework would not normally be built out of a pipe. And the fact that the device was made harvesting materials from fireworks doesn't necessarily mean that it would operate or act as a firework. In fact, the government's experts testified that it was very common and becoming more common to make these devices from firework material. So the fact that it had firework material in it doesn't necessarily mean that it was intended to be a firework because it was a metal pipe filled with explosives. If this would allow the government to convict people where there is evidence in the record of innocent socially valuable uses, does that impact the holding in Ross that it's not unconstitutionally vague precisely because there's a limitation to cases where there's no social value? If we're allowing it to proceed even where there's evidence of social value, does that undermine the holding of Ross that this statute is not unconstitutionally vague? I don't believe so. I mean, the reason it's... The court in Ross wasn't directly met with the question of whether or not it was an affirmative defense or whether or not it was an element. So that language, to any extent it's applicable to Beeson, seems to just more talk about the fact that the statute contains the provision that allows for there to be proof that it does have a social use. Beeson is the case where the issue was directly confronted as to whether or not it has to be put forward as an affirmative defense. And the court said unequivocally that it did. And I would note that even though Beeson hasn't been cited in this circuit since it was issued, it has been relied on in other circuits, although they're not in the brief. But as recently as 2019, it was cited favorably in the first circuit. And this court in Harbinger cited directly to United States v. Johnson. And in Johnson, it describes that provision as an affirmative defense. Johnson just highlighted what Harbinger, the analysis that Harbinger ended up using was if the device is ambiguous, there needs to be more evidence just beyond the fact that it would explode. But here the government, I believe, cleared that hurdle because it showed it would explode, it would cause metal fragmentation, and that it didn't have the components of a firework in it. So for that- How do the other circuits deal with this in the charge context where it's ambiguous? I don't know the answer to that, frankly. Because the government operated on the assumption that it was unambiguously an explosive bomb. I don't know how they would charge it. So is it your position that every time it's designed like a pipe, it's a pipe bomb, that it is unambiguously a bomb? Not necessarily because each device could be different. What makes this an explosive device is the fact that it's a metal pipe. It contains rapidly burning materials, which is what will cause the fragmentation, and that it is sufficiently sealed to ignore, under the expert's opinion, to cause containment that would cause it to rupture and send fragments. As a general rule, I would say that if a metal pipe contains explosive materials that are fast burning and will cause the pipe to rupture when lit, that would be an explosive bomb. But again, it would come down to exactly what the nature and construction of the device is. Thank you. And then the government's position as to the charge issue is that because it follows the model jury instruction, Harbinger doesn't require a new element to be placed, that there was no error in the charges. Yeah, was Harbinger, was it even addressing instructions? No, it was a sufficiency analysis. So that's why it didn't determine that there were additional elements that need to be added. It was simply a question of when the device is ambiguous, what kind of evidence does the government need to put on? What do we do with the evidence of defense expert Matthew Hefty that because it used black powder, that it's low explosive and that that's why it's considered to be fireworks rather than a pipe bomb. That's just a shorthand. Sure, so the government does not take any issue with the fact that the materials in this case were harvested from fireworks. That's what was the case. The chemist in this case tested, he tested the hobbyist fuse on both ends to ensure that it would light from both ends. He tested the black powder and he tested the stars and they indicated that they would burn rapidly. So the rapid burning is what will cause the pressure to push, to create, be generated in the pipe itself and cause the pipe to rupture and fragment. So that is the evidence that the jury could then rationally rely on in addition to the expert testimony to determine that that is what would happen if the device was lit. Do you, I mean, could the jury credit though the testimony that because it doesn't have metal clappings screwed onto the device that it's missing something that a bomb should have and that it's maybe happenstance that the dimes are enough to hold it in. The government's expert testified that it would be sufficient to create containment and containment is what is necessary to cause the fracturing. Right, but why doesn't it have just have something to hold it on that would be normal? I can't speculate as to why defendant didn't use a metal cap but it was sufficiently taped and it was waxed and it was, it did have dimes so which were of metal for reinforcement and had a bottom cap. So that was sufficient to create containment. There was sufficient containment on the top because of the clay and the cardboard and the tape that was overhanging the lip of the device and that would cause the device to rupture once it was lit and the pressure was created. Do you think the jury could have found that it was not a bomb? This is a question for the jury and that the jury found that it was a bomb. I think obviously when reviewing for sufficiency this court looks to the jury's verdict and reviews it in the light most favorable to the government. The government's position is that it's unambiguously a pipe bomb. So the jury would have been in error, this wasn't a toss up that the jury, leave it to the jury. Would the jury have erred if it would have found based upon the testimony of the expert I just mentioned that it was a firework or that it wasn't, that the government failed to meet its burden? I would say so but there's no remedy in that case. Well yeah, exactly. No, there's no remedy but the point is whether it's really unambiguous. I'm testing the proposition of whether it's unambiguous or not. And if it's unambiguous then it would be error for the jury to have found the contrary. But if it's a toss up then it could be ambiguous. I would say it is unambiguously an explosive device based on its construction, its materials, and frankly in light of this court's precedent in Charles, in Hunn, in Rosa, in Waits where it was presented with a device that was made of a metal pipe filled with explosives that would fragment upon use that that was the proper decision to come to in that he possessed a destructive device. Thank you. Yes. If the court has no further questions for me I would just simply ask that the judgment be affirmed. Thank you. Do you need your extra two minutes? No, not today. I'll take it. Just a couple points on rebuttals, Your Honor, or on rebuttal, Your Honors. I'm going to try to hit the instruction, our asserted innocent use, the importance of missing evidence, and then a little bit about what the element actually is and then the concerns Judge Elrod raised about Ross, which I share. So first, we proffered an instruction that told the jury the term destructive device is defined to mean what it means in the statute, the literal statutory language, and that included the designed for use as an element. The issue about Beeson and its affirmative defense came up actually before, during jury selection in the beginning. And so at that point, the judge said, hey, my clerk found this case called Beeson. Tell me what you think about it. And then we were like, we think it's lame. And then the government was like, we think it's awesome. We think it's precedent. Right. And then, yeah. And then so what happened then was the instructions that appeared at the charge conference did not have the language about design for use. And then that's where we were objecting, saying we want that back in. Harberger controls. We don't think Beeson controls. So this was not a situation where we were like, oh, well, we just don't want that language. We absolutely wanted the language. We were just accepting that we had lost that argument and we didn't want it told to the jury that we had the burden to prove something because that would shift the actual burden the statute requires onto us. The court wanted to put it in as an affirmative defense. Is that right? That's what the option was. And we declined that option because we thought that that impermissibly shifted the burden onto us to disprove an element of the offense. Just real quick, I just want to clear up the asserted innocent use here is not an aerial firework that goes up in the air and blows up. We didn't have a charge in there. The asserted innocent use was he sealed the bottom but left the top unsealed. That creates containment but not confinement of gas. That clay plug also had a hole in it. And so what would happen is gas would build up but it would funnel towards the end because gas takes the least... I can't remember the phrase but it goes to the easiest place it can go to escape, right? And so it went up to the top and the idea was that it would shoot a pretty firework or pyrotechnic display out of the top kind of like a fountain firework, you know? So not like it would actually propel anything out of it or it would go up into the sky. It would just shoot a little pretty color display. And Agent McCullough testified that he thought, yeah, it could work like that. He just thought that the way it was constructed was so poorly that at the very least the bottom would shoot out before that happened. And I mean, we'll take the idea that Mr. Brannan is a negligent or reckless firework enthusiast because that would mean he's not actually guilty of the charged crime. I do want to emphasize the thing that Harberger recognized and that's important here is the government's right to say you've never found a metal pipe to be not an explosive device. But you've also had metal pipes like in Beeson that had BBs inside or a whole bunch of explosive powder that nobody would really, that was totally inconsistent with the asserted innocent use. Or you've had cases where the agents blew the thing up and it acted like a bomb. And so when the defendant's saying, yeah, I just use it to drop it in the water to stun fish and it shoots 200 yards and fragments everywhere, that rebuts, easily rebuts the defendant's asserted claim. And so the objective design can absolutely be the thing that tells us that the defendant or that the designer intended to create a weapon, but it isn't the be all and end all. And you have to look at the circumstances. And the thing that didn't happen here is there were no tests or replicas or evidence that suggesting that the powder here was such that it could only explode in a way that would be consistent with a bomb as opposed to shoot pretty fireworks out of it. And so just to be clear, the element that we're talking about here is destructive device and that requires purposeful design. In a case like Mr. Brannon's, where he's also the designer, that's where we get the stuff about him intending, right? But there's, you can imagine many cases, in fact, Beeson was one where it's an improvised device, but Beeson himself didn't make the thing. He just was part of the bartering transaction for grenades. And so that is a different situation. So what the government has to prove is purposeful design. And just really quickly, I'd like to stress that I think that Ross is super clear in that this language is a crucial limitation, not something that is exempting an explosive device or a destructive device from exclusion. What we're saying there and what Ross recognizes, there's no such thing as an explosive bomb that's not designed for use as a weapon, right? You don't have an explosive bomb, but then I didn't mean to use it that way. You're still guilty if you've got an explosive bomb, but you just have it on the shelf, right? It's not about use, it's about design. If you do, the problem there is that it does create this concern that maybe this becomes vague. And that's why Ross's construction that this is a crucial limitation is holding because it was necessary to save or at least alleviate the vagueness concerns that the defendant in that case raised. There's nothing else, Your Honors. Submit the case. Thank you. We appreciate both excellent arguments in this case and the case is submitted.